We will hear argument this morning in Case 24-394, Oklahoma Statewide Charter School Board v. Drummond and the Consolidated Case. Mr. Campbell. Thank you, Mr. Chief Justice, and may it please the Court. Oklahoma's charter school program relies on private organizations to create more educational options, and it empowers those groups to innovate by giving them broad autonomy over their mission, curriculum, and operations. Fueled by private ingenuity, those schools are thriving, as they specialize in diverse subjects like Native American culture and environmental stewardship. But state law categorically bars religious groups and programs, deeming religion to be the wrong kind of diversity. That religious exclusion violates the Free Exercise Clause. This Court has held three times in the last eight years that when a state creates a public program and invites private actors, it can't exclude people or groups because they're religious. The Oklahoma Statewide Charter School Board is committed to this principle of religious neutrality. That's why it approved St. Isidore's application based on the strength of its proposal, refusing to reject the group because of its faith. But Respondent won't tolerate groups like St. Isidore operating in the program, so he sued to exclude them. He now argues that the First Amendment, specifically the Free Exercise Clause, is irrelevant because St. Isidore is part of the government. But it's not. St. Isidore was privately created by two Catholic organizations, and it is controlled by a privately selected Board of Directors. Under this Court's test, St. Isidore is neither the government nor engaged in state action. There are already hundreds of families that have signed up for St. Isidore. They're part of Oklahoma's community, too. They should not be treated as second class. I welcome the Court's questions. Well, the argument is that either you are engaging in some sort of state action, which is, I'd like you to at least discuss that because this isn't the normal context in which we see that, and that you are a state entity, you're a public school, a public Catholic charter school. And I think you should address that because those seem to be at the crux of the differing opinions and the argument. Yes, Justice Thomas. So to start with governmental entity, there are two requirements that this Court has established. The first is state creation, and the second is state control. There's no state creation here because St. Isidore was established by two private Catholic organizations, and they applied to participate in a program. They built their own charter school program, they came up with their own startup funding, and they asked to be a part. That looks nothing like what this Court has found to be state creation in cases like LeBron, Biden, and Arkansas. In all of those cases, the entity was created by name through special legislation. Nor is there government control here because St. Isidore is operated by a privately selected board. Again, in all three of the cases that my friend on the other side cites, there was a state-selected or a government-selected board. And that's different from this case because, as he admits, we don't have that here. Now, why does that matter? It's critical because a state-selected board has government control within the organization. All we have here is government oversight outside of the organization. And this Court has been clear in its state action cases that government regulation from the outside is not sufficient to constitute state action, let alone control for purposes of governmental entity analysis. Now, moving to the state action test, which my friend... Before you move, can I just ask you a question about that? Because I understood that charter schools actually had the... their curriculum was reviewed by the board, and it has to be evaluated and accepted. Is that not so? So, at the application stage, there's just a curriculum overview that's provided. The Court can find it in the joint appendix on pages 19 through 20. And you can see it's very high level. But, yes, the board reviews it as part of the application to ensure that this school is going to provide a quality education to students. So how does the board do that if the curriculum includes religious components? I mean, what input or oversight or ability to actually review that does the board have? It's the same way that the board would provide review for a school that focuses on Native American culture. It's not going to dive into the details of the subject matter-specific topic that the school wants to focus on. But it does have a duty to sort of assess whether or not that curriculum meets state standards. And when the curriculum is religious, I'm just wondering, don't we have the kinds of entanglement issues that the Establishment Clause worries about? Not at all, because the state board does not get into the details of the curriculum, particularly any kind of subject matter curriculum. What the state board is looking for is whether the state standards are satisfied. The state standards require things like math and reading and language arts. That's what the state board is concerned with. It doesn't second-guess those specific subject matter details. How about if a religious school wanted to change its curriculum to teach only creatism and not evolution? You'd have to make a judgment, right, as to whether that was a quote-unquote quality education, because that's your legal charge, isn't it, to evaluate the curriculum? It is the legal charge to evaluate the curriculum. And they have to teach enough to pass the national state test. That's one of the requirements of a charter school. It is one of the requirements. So as much as you want to say that you are not looking at the substance, you're charged by law to do that, because you have to determine whether it's a quality education, to evaluate charter school performance, to approve or reject any proposed change to the curriculum, to consider whether to renew or terminate one, and to oversee and supervise the starter schools. That's your responsibility, correct? Those are a number of the responsibilities. So what would you do with a charter school that doesn't want to teach evolution, or doesn't want to teach history including the history of slavery, or doesn't want to include having children of another faith in them, as this one does? This one does not say it will exclude children of other faiths, but it said if you want to attend this school, you have to attend mass, you have to accept the teachings of the church with respect to certain principles. So is that something you look at? No, it isn't, and I want to start at the back end of your question, which talks about St. Isidore. So St. Isidore allows exceptions for anyone that doesn't want to attend mass. That's on page 27 of the student handbook. In addition, it does not require students to affirm its religious beliefs. I would point the court specifically to respondent's appendix, page 322, where it says point blank that there is no requirement that a student affirm the beliefs of the school. What if it didn't, Mr. Campbell? If it required a statement of faith in order for admission to the school? Yeah, if it required a statement of faith, if it said we only want to educate children of our own faith, would that be the same? Because I could make the same arguments that you just made. Oh, it was created in some sense by private people, and there's a private board. But let's just hypothesize that this school goes further and says we only want to educate children of our own faith. We do insist on a statement of faith. Would your argument have to apply to that, too? I think the argument and the analysis would be different. Because this case involves a categorical religious exclusion and facial religious discrimination. So under this court's precedent in Carson and the cases that came before it, we have a lack of neutrality on the face of the law. So we go straight to strict scrutiny, and strict scrutiny isn't satisfied here because respondent only has anti-establishment clause interests that have been rejected by this court in cases like Carson. Maybe I'm just being dense, but I'm not understanding. If your argument is, look, this is not a public entity, it's a private entity, and so it has to be treated equivalently by the government, that's still true in the hypothetical I gave. So why would there be any difference in the outcome? Because the challenge here is to the facial religious discrimination that says if you have any sectarian program, you can't be a part of the program. But there's a separate requirement to get into the program, which requires that the school be open to all. I guess the question is, why is a school allowed to strike some requirements, but not strike other requirements, right? Oklahoma law has a requirement of non-sectarianism, for example. Essentially what St. Isidore's did was it struck that from the contract. So the next school says, we want to strike from the contract. I mean, St. Isidore did some other things too, right? It struck out the non-discrimination provision because of doctrines like the ministerial exemption or church autonomy principles. So the next school says, we also want to strike from the contract the requirement that we teach children of all faiths. I would think that your argument would have to apply the same way. It would be different analysis in those cases. And if we just take a step back and consider how free exercise clause jurisprudence works, whenever a litigant wants to challenge a specific requirement by the government, then it has to focus on that requirement and show that it's either not neutral or not generally applicable under this case law in Smith. So if someone wanted to challenge the requirement that the school be open to all, they would have to show that that requirement is not neutral or not generally applicable. And if they can show that, then they would proceed to strict scrutiny. And at that point, the state would have a very different interest than it has here. The state's only interest here are already rejected anti-establishment interests. The state's interest in that case would be very different, the interest in ensuring that the school is open to all. Thank you, counsel. You rely heavily in your brief on a number of cases, Trinity Lutheran, Espinosa, Carson. Those involve fairly discreet state involvement. In Trinity Lutheran, they're going to pave or put wood chips on the playground. In Espinosa, it was a tuition credit. In Carson, again, tax credits. I mean, this does strike me as a much more comprehensive involvement. And I wonder what case do you think supports the position with respect to that level of involvement? We think Carson does, because Carson established the principle that when the state creates a program or a public benefit, that it can't exclude groups or people just because they're religious. And that's exactly what we have here. The state of Oklahoma has created a charter school program, and it's invited private actors to participate, but it's telling religious groups and religious groups alone that they don't belong. Certainly the facts here are different than the facts in Carson, but the principle is not all fours with what we're arguing. Thank you. Justice Thomas? How different is the involvement of the board in the school operation as compared to, say, an accrediting authority? And by the board, do you mean the state board? Yes. Yeah, so the state board acts in many ways like an accrediting authority, and so one of the things that my friend on the other side talks about is that there are opportunities for private religious groups to get measures of public funding. But in order to access any of those programs, those private schools need to be accredited. And accrediting organizations, they look at a high level at the curriculum to ensure that things like state standards are satisfied. That's all that our board is doing. I think one example to illustrate the point is that if one of our charter schools came to us and said we want to entirely change our mission, we want to go from being an organization focused on Native American culture and now we want to be a STEM school, that would be the kind of change that the board might look at. But the board is not going to dig into the details of anyone's curriculum. That's not their charge. Justice Leito? The three cases that Chief Justice referred to, Trinity, Lutheran, Espinoza, and Carson, involved grants and tax credits. This involves a contract. Is that a relevant constitutional distinction? I don't believe it is. In fact, if anything, I think this case is potentially more dangerous because if this contract transforms St. Isidore into the government, then I worry the same thing will happen to other government contractors. For instance, consider the faith-based foster care agency in Fulton. That agency entered into a contract with the city of Philadelphia, and if this court finds government action here, then I worry that it will bleed over and undermine religious liberties in cases like that. One other question. The respondent says that if you win, then some students' only free public school option will be a religious charter school. Is that true in Oklahoma? And if that were the case, would that present an Establishment Clause problem? It's definitively not true in Oklahoma for two reasons. One, no Oklahoma student is required to go to any charter school. Number two, there's a provision in the Oklahoma Charter Schools Act that makes clear that an entire school district cannot convert into a charter school, and that's Provision 3-132.2, Subsection C-2. So it can't happen in Oklahoma. If it did happen, it would be a very different case, and it would not be a reason, the mere specter that that might result in the future, is not a reason to categorically exclude religious groups on the front end. There could be an as-applied challenge brought by a family if that situation ever did result. Thank you. Justice Sotomayor? Counsel, if the government wanted to paint its Capitol building, and it wanted to paint landscapes, would it be violating your theory of contracting if it said, we want a secular landscape, we don't want a religious one? How is this that different from this case, or is it? Are you saying that any time the government contracts for anything, it must include not a religious person, because your charter school doesn't want to just give a secular education. It wants to give a religious education. So what you're saying is, does the government have to accept the religious landscape? I don't believe so, because it sounds like they're hiring someone to paint the government's own message on the side of a building, if I'm understanding your hypothetical. There's a contract here with the archdiocese, meaning the contract is with a corporation that is run by the archdiocese of Oklahoma City, and the diocese of Tulsa. They provide all the teachers. Their handbook requires students to attend Catholic Mass. You say there's an exception for that. But they require students to support the school's mission. Part of that mission is to participate in the evangelizing of the church, and to be a genuine instrument of the church. Your school doesn't want to be just a charter school. It wants to be a religious charter school, correct? St. Isidore undoubtedly is a religious organization. It wants to provide religious education. I thought that the essence of the establishment clause was that, and Carson said this, Trinity said this, in basically every religious case we have, that the essence of the establishment clause is that we're not going to support religious leaders in teaching their religion. Do you accept that proposition? I don't accept it if it's part of a neutral and generally acceptable program. Well, that's an interesting question. So if we decide to fund just a Christian school and no other school, you say that would violate the establishment clause, correct? That very well might violate it. If the government's picking and choosing religions, then that would. If we pick and choose, as we did in one part of our history, only Catholic schools to teach Indian children so they can become Catholics, would that violate the establishment clause? If the government is picking and choosing a particular religion and not agreeing to allow other religions into the program, then that would be an establishment clause violation. And here they're not teaching other religions, correct? They're only teaching the Catholic religion. St. Isidore is, but the program is open to other religious applicants to apply to teach other religions. Sure, if they don't teach religion. Well, under our theory, it would be open to other religious organizations that are willing to abide by the other terms of the program. So what you're basically saying, there's no longer no play in the joints, this has nothing to do, there's no establishment clause really. What you're saying is the free exercise clause trumps the essence of the establishment clause. Because the essence of the establishment clause was we're not going to pay religious leaders to teach their religion. That is and has always been the essence. And here we're paying Catholic leaders, Catholic teachers. You can only be a teacher in this school if you're willing to accept the teachings of the Catholic church. Then we're willing to say the free exercise provision trumps the establishment clause. One factual point, it's not true that St. Isidore only hires Catholic teachers, it hires teachers that aren't Catholic. That's in the record in response. But they have to teach it within the morals of the Catholic church. That is correct. All right. Justice Kagan? Mr. Campbell, you rely a good deal on Carson in your briefs. It strikes me that this is a fair bit different from that case. When the court was looking at that case, it said, we just don't think that the state is, as it then professed to be, funding only public institutions. We think that they're funding private institutions. And we went through a litany of the ways in which the private schools differed from the public schools. But when I look at Oklahoma and its charter school program, these schools look like regular public schools. They accept everybody. They're free. They can be closed down by the state. There's a good deal of curricular involvement by the state, approvals by the state. They have to comply with all the state standards. I mean, if you just go point by point through all the things that we talked about in Carson, here it comes out the opposite way, that these charter schools are, in every respect, equivalent to regular public schools. So why shouldn't we take the state at its word and say the charter schools are, except for some things on the margin, equivalent to regular public schools? And, as we said in Carson, a state has the right to have its public school system to be non-religious. I disagree that these schools look just like traditional government-run schools. They don't. In fact, the baseline rule under the Oklahoma Charter Schools Act is that none of the rules that apply to government schools are applicable to charter schools, unless the act otherwise specifies. So there are dozens of other requirements that charter schools are not subject to. The baseline here is that charter schools have autonomy. They're subject to the same financial audit and reporting requirements. They're subject to the same state testing requirements. All curricular changes have to be approved. In the end, the curriculum can't go forward except for state approval. Proficiency standards are set by the state. Student suspension requirements are set by the state. I mean, these are state-run institutions. They give the charter schools a good deal of curricular flexibility, because that's thought to be a good educational thing, is to have curricular options in the school system. But with respect to a whole variety of things, the state is running these schools and insisting upon certain requirements. The state is not running these schools. These schools are run by the privately selected board of directors of each of the schools. And if you look in particular at the Oklahoma statute, specifically Section 3-136, Subsection 7, it says that all authority is vested in those governing boards of the schools. All that the state is doing here is exercising contractual oversight. One of the assumptions of your question, as I'm understanding it, is that the word public equals government-run, but it clearly doesn't. Not under this court's case law, where the court has recognized that things like public access channels, public utilities, public defenders, public accommodations, none of those involve government-run entities. They all, at least in many instances, involve private actors. Thank you. Justice Gorsuch? You made the point that historically states sometimes funded religious schools. Some of the amici on the other side contend, however, that there are historic examples of funding being denied to religious schools and no free exercise claim followed. I wanted to get your thoughts or reactions to that. Yeah, one reaction is most of those examples that were provided in those amicus briefs came from the early 1800s, and no one understood the Establishment Clause to be incorporated against the state. Or the Free Exercise Clause. I'm sorry. I take that point, but there were state equivalents to the Free Exercise Clause under state constitution, and their point is even there, there are no challenges. And I would say that this case doesn't involve those state equivalents. It involves the Free Exercise Clause of the First Amendment. Nevertheless, I do think the history that we cite is important for purposes of this case because it dispels any suggestion that there is an Establishment Clause violation. And in terms of the Free Exercise issue, I think that issue is foreclosed by Carson because this court established the principle in Carson that said you can't create a program, invite everyone, but exclude the religious. And then your friends on the other side and amicus there, too, pointed out that it's important under state law for state charter schools to be considered state entities for purposes of securing bonds, things like that. And I took your response in the reply brief to say they can continue to do so because what we're asking is whether it's a public entity for federal law purposes. I think that's a fair summary of what your response is. I think that's fair. And I'm curious, do you have other examples of entities that might be treated as private for federal law purposes but public for state law purposes? I have one example that involved Congress treating an entity as private and this court treating it as public. So it's not a state-federal divide, but it is a separation of powers divide, and that's in the LeBron case. Congress declared Amtrak to be a private actor, but this court looked at it from a constitutional perspective and said that it constituted an arm of the government. Last question. You've emphasized the lack of creation and supervision on the board. I can imagine some states might respond to a decision in your favor by imposing more requirements on charter schools in some states to require public officials to be on their board and more involvement in the creation of these institutions. Have you thought about that boomerang effect for charter schools? We have thought about it, and that certainly is a decision that states are entitled to make. They can set up their charter school programs as they see fit. We think there are significant tradeoffs because part of what makes charter schools great is the autonomy that they're provided and the private ingenuity that they bring. But if a state wanted to assert more control over those entities, then it would be free to set up its program that way. And it would yield potentially a different result in those cases. It could potentially, depending on how they set it up. Thank you. Justice Kavanaugh? First, a few factual questions. A student in Oklahoma is free to attend a public school if they choose, correct? A government-run public school, yes, they are free to choose that. In other words, no student in Oklahoma is required, at least as I understand it, to attend a charter school, correct? That's correct. And there are other charter schools in Oklahoma, correct? Yes, indeed. There are 33 and there are seven virtual, which would be accessible to any student no matter where they're located in the state. And what are some of the themes or focuses of those charter schools to the extent they have distinctive qualities? There's a vast array. There are some, as I mentioned in the introduction, that focus on Native American culture and environmental stewardship. There are others that focus on STEM curriculum, performing arts, foreign language immersion, et cetera, et cetera. There are many other examples. But again, the problem here is there's one type of education that's off-limits, and that's religion. And that can't be consistent with this court's precedent. And if any other religious group wants to operate a charter school, they too can apply. You're not saying that it's only Catholic schools, correct? That's correct. We would treat any other religious applicant the same way the state board treated St.  So this is a response to Justice Sotomayor, and I just want to make sure this is clear. You're not saying that the state can favor one religion over another? We are not saying that at all. And you're not saying, I think, but confirm that the state could say we're going to have charter schools but only religious charter schools? We are not saying that at all. Right. If you have charter schools, you can't favor religion. Your point is you also can't disfavor religion, correct? That's right. And then the case that I think the respondent relies on pretty heavily is West v. Atkins, the case about medical services in prison. Can you respond to that? Because I think that's one they put a good deal of emphasis on. Yeah, a couple of responses to that. The first point I would emphasize is I think that outsourcing theory that they're relying on is entirely foreclosed by this court's decision in Rendall-Baker. So in Rendall-Baker, the question presented built in that idea of outsourcing. It said that the school at issue there had a duty under state law to provide that education, and that's what transformed it into a state actor. And the dissent in that decision relied on that theory. But importantly, the majority looked at that same state law that put that duty on the state to provide that education, and it said that in no way amounted to state action. So I think that argument is foreclosed by Rendall-Baker. Second point I would make is that the state here hasn't outsourced its obligation at all. The state continues to provide free public education to all children in the state through its government-run schools. And the last point I would make is a factual distinction between West and our case, and that's because West involved a situation where the plaintiff had no option. The plaintiff only had one choice for the orthopedic services that he was seeking. In this case, no one is forced to go to St. Isidore or any other charter school in Oklahoma. And one last question to the extent you know. What is the state oversight of private schools look like in Oklahoma to ensure that they meet certain standards? And this is following up on Justice Kagan's question because that's another bucket of schools, and I assume the state does something with private schools, but what is that? The state does have some oversight, particularly when a private school wants to participate in one of the school funding or school choice programs. So Oklahoma has a tax credit program, but in order for a school to participate in that, they need to be accredited. And so that accreditation process does involve oversight looking into the curriculum. What else does the accreditation process for private schools entail? It primarily looks at the curriculum to ensure that it's meeting minimum standards, to make sure that children are learning the basics of reading, writing, math, etc. There is not a lot of a focus on how the schools operate, and so it primarily focuses on those curriculum issues at a high level. Thank you. Justice Jackson? So as I understand it, your free exercise claim relies on the Trinity Lutheran Carson line of cases. And you've said several times here that the argument is that when a state creates a public benefit, it can't tell religious groups they can't participate. That's sort of basic law as we understand it today. I guess what I'm confused about is whether what you are asking for in this case really maps on to that line of analysis. And so let me explain to you what I'm concerned about, and then you can tell me why I'm wrong. So your argument is that St. Isidore's is seeking the same public benefit as everyone else, which is to start a charter school. But I think that actually might misunderstand the public benefit in this scenario, because Oklahoma has been clear that what it wants to do is use the charter system to set up a system of secular public schools. That's what the charter program does. The contract provides money and support for private entities. And so we can assume, we can start where you start, we can assume this is a private entity. And Oklahoma says, fine, private entities come in and we provide money and support if you want to establish a secular charter school in order to advance our goal of having that sort of system. Importantly, I think we've said in Carson that they are allowed to do that. Carson says the state can permissibly choose, quote, to provide a strictly secular education in its public schools. And so that appears to be what Oklahoma is trying to do. Now, in this case, St. Isidore doesn't want to establish a secular school, which is what the public benefit is. Instead, they want to establish a religious school. So as I see it, it's not being denied a benefit that everyone else gets. It's being denied a benefit that no one else gets, which is the ability to establish a religious public school. Can you explain to me why this is actually the same as Trinity Lutheran or Carson or whatnot? Well, I think building the secular requirement into the definition of the benefit creates the same error that this court corrected from, that the lower court committed in Carson. And what I mean by that is the court used the phrase, it was talked about semantic exercises. And so there, the state of Maine tried to build the concept of secular into its definition. It's not a semantic exercise, because I do think that you would have a Trinity Lutheran problem if St. Isidore came in and said, we would like to establish a secular public school. We want our school to look exactly like all of the other charter schools that are out there. You're offering money to establish this kind of school, and here we are. And if the state said, oh, but as they did in these other Trinity Lutheran, et cetera, cases, oh, but you're religious. And we think that if we give you money, that'll be an establishment clause violation or whatnot. You would totally be on all fours with Trinity Lutheran. But here, I think what Justice Kagan said is St. Isidore wants to come in and not just get the same contract that everybody else gets, because the contract has in it that you have to have a secular school. What they want to do is come in and get a contract that is tailored to their own terms, that includes religious education. And the state says, that's not the benefit that we're offering here. So you're actually not in Trinity Lutheran world, I think. I disagree. I think it's, again, exactly what Maine tried to do in Carson. They tried to build in the notion that the benefited issue there was, by definition, secular. That's exactly what the argument you just raised is trying to do. Well, let me ask you another question. This goes back to Justice Sotomayor's hypothetical. So suppose we had a state that wanted to have murals of landscapes on its public buildings around. And so it was offering money for painters to come in to do that. And it wanted no messaging, no nothing, just the mountains, landscapes. That was a term of the benefit of the money that they were providing. Would it be a free exercise violation if a particular painter came in and said, here's my proposed sketch. It has religious symbols in it. That's important to me because I'm a religious painter and this is what I would like to do. And the state said, I'm sorry, we're not going to do that. Now, I mean, yes, they'd be rejecting him because the product that he was offering had religious symbols. But I doubt that that would be a free exercise violation for the reasons that I've articulated. Well, that case would turn on whether it was government speech or whether the government created a forum for anyone to participate. No, forget the speech. That's just the framing. The point is, would that person say, you are rejecting me as a painter because of my religion in a way that triggers Trinity Lutheran. When really what the state is doing is saying, we are offering a particular public benefit. And the particular benefit is a nonsectarian mural, a secular mural. And to the extent that you're not wanting that, we're rejecting your proposal. I think that case is very different from this case because in that case, the government is trying to speak its own message on its own buildings. Here, it's giving broad autonomy to the schools to come up with their own mission and their own curriculum. And so this involves that private entity being a part of the process. Thank you. Thank you, counsel. Mr. McGinley. Mr. Chief Justice, and may it please the court. The free exercise clause bars a state from inviting private parties to participate in an educational funding program while excluding those who exercise their faith. But that is precisely what Oklahoma law does here. Respondent seeks to justify that religious discrimination by recasting St. Isidore as a government entity or state actor with no constitutional rights. That is incorrect. St. Isidore is a private religious nonprofit. It was created by private actors, and it is controlled by a private board that consists of entirely private actors. It thus lacks the essential elements of a government entity. Nor is St. Isidore exercising a traditional and exclusive government function. American history is replete with examples of private organizations offering free education to the nation's youth with support from the public fisc. All that leaves is the fact that Oklahoma law labels charter schools as public schools. But constitutional analysis turns on substance, not labels, and casting the cloak of state action too broadly risks intruding on individual liberty. The establishment clause does not restrain St. Isidore, and the free exercise clause protects it. I welcome the court's questions. You say St. Isidore is not a state actor. What features would you add to convert St. Isidore into a state actor? So, Justice Thomas, what the court has said, particularly for government entity analysis, which is what I take my friend on the other side to really be focused on at this point, is that it requires government creation and control. And so I point you to this court's cases in LeBron, U.S. Olympic Committee, Nebraska, Arkansas. And what it says is that in all of those cases where the court found a government entity, there was creation, particularly by special legislation, where the government literally creates the body. But the court has also said that's not enough. That's what the U.S. Olympic Committee case says. It says just because the U.S. Olympic Committee was created by special legislation, a charter from Congress, it wasn't controlled by the government because its board was not controlled by the government. But in LeBron, and I would particularly point you, I think, to the analysis in LeBron where Justice Scalia does a really nice job of laying out all the different types of federal private corporations where the government or the Congress has said at times, we don't want this to be treated as the government. But this court has not always said that that's controlling for the constitutional reasons. In LeBron, it was a First Amendment claim. Then in the follow-on Amtrak case, you had a private non-delegation claim. And in both cases, the court said Amtrak was created by the government and it was controlled by the government. And it had distinguished other instances, including U.S. Olympic, but then also the regional rail cases where you even had some control at some level by government appointed board members, but the court said it wasn't complete control and that wasn't enough. So those are the two defining features, Your Honor. Counsel, there's been private education, and you're right, there's been free private education to a variety of different groups. But none of them are government supported, meaning they weren't using government money to do this. They were using donations or whatever sources of income they could find. The hallmark of public education is that taxpayers are paying for it, not private donations. The government's doing this. And that has never been something that other people did for the government, meaning charter schools or creation of contract, which is the question, the point that Justice Alito made, which is charter schools are using only government funds. And so the question is not whether it's a government agency, but whether it's a state actor. Now, going to the West suggestion, your co-counsel or brother on the same side said that there, there was, you were, the students, the, I'm sorry, the inmates were required to use this doctor. And this is different because no student is required to attend a charter school. But that's not the point, is it? The point is whether you're acting for the government or not. So I'll take both your questions in order, Your Honor. With respect, I disagree. Regarding the history, I would point you to our opening brief, pages 41 through 45 and 50 through 53. But I'd also point you to the USCCB brief, the Glenn, the Professor Glenn brief, all of which provide examples where the government was providing funding. Sometimes the problem is that using history in this case is so crazy. Because the first thing is no one thought there was an obligation of government at all to provide funding for most of the history of the early history. It was around the time of the ratification of the 14th Amendment that the idea that states would provide a constitutional right to educate and did was very different. Number two, I think the other side admitted, we don't use the history of segregation to interpret the Equal Protection Clause now. I doubt very much we would use that history of the federal government funding the churches to teach Indian children and convert them as proving anything about the free exercise or establishment clause now. So forget the history. Let's go to the basic point. And let's come to more modern times, West, which is the issue is not who's doing it, but whether the government is outsourcing to that person their own obligation. So I have a very direct answer to you on that, and I would point you to Rendall Baker. Well, the problem with Rendall Baker is that the Carolina school system didn't claim that was a constitutional obligation. They had not been educating maladjusted children ever. They had just decided that they would start doing that, but the court didn't view that as a constitutional obligation. It was a contract obligation, but not a constitutional obligation. I'm not sure about that, but I think in Carson, Maine viewed it as a constitutional obligation to provide free public education, and one of the ways that they did that was through the program that was upheld in Carson versus Macon. But all of those programs had an intermediary, someone else who was making the choice, not the government. Here, the government is the actual creator of the charter school because the charter school does not exist without government funding. So if it's not a government actor, it is still creating a religious institution. So I disagree with that, Your Honor. I'd point you to page 157A of the petition appendix in our petition, which is a declaration called the Lesnea Declaration that makes it very clear that the only way that funds will be provided to St. Isidore is if parents choose to do so, so that makes it no different than... We go back to who defines it, the parents or the state in being the one who says you can do what I would do. All right. Thank you, counsel. Thank you. Thank you, counsel. Justice Thomas? Justice Alito? Justice Kagan? Mr. McClain, you struck out, as I talked to Mr. Campbell about, the requirement in the standard contract that insisted on nonsectarianism and also the one that insisted on nondiscrimination. Anything else? Was anything else struck out? So I just want to clarify, we didn't strike out the nondiscrimination clause. There still is the nondiscrimination clause. We had agreed to abide by all applicable law. What we recognized and what the state recognized in contracting with us is that as a... You modified it to incorporate various church autonomy principles. Correct, but I would say, Your Honor, those are anti-discrimination principles. That's fine. Sure. It's not the point of the question. Sure. Anything else? Did you strike out anything else? In terms of striking out, I don't believe so. What if you had wanted to strike out other provisions, for example, curricular provisions, because the kind of religious education that you thought it was your mission to provide were inconsistent with those curricular requirements? So I think that would be part of the contracting process, and I do agree with my friend that the framework of analysis would be very different, right? Because here, there's no dispute that St. Isidore qualifies for the program for all purposes other than the sectarian requirement. So we're dealing with the Carson-Trinity... Right, but sectarian means something. It involves a certain kind of exercise. So it's not just like you want to put the word Catholic up on the door. You want to teach certain things, as would any or most religious schools. So suppose a religious school came in and said, in addition to the modifications that you made, we want to make some further modifications with respect to the curricular requirements. I'll give you a hypothetical just so we can focus the inquiry. Let's say we're not in Oklahoma. Let's say we're up in New York, and there's a Hasidic community that has a yeshiva. And it's a very serious yeshiva, and what that means is that almost all the instruction has to do with studying Talmud and other religious texts. Very little of it has to do with secular subjects. Almost none of the instruction is in English. Almost all of it is in Yiddish or in various, like, ancient Hebrew, Aramaic kind of languages. And that's the charter school that this Hasidic community wanted to qualify for. Does New York have to say, yes, even though that curriculum is super different from the curriculum that we provide in our regular public schools? Yes, come join our completely taxpayer-funded charter school program. So the first thing I would say is that, given the nature of charter school programs, it very well might be that the state wants that or is fine with that because it provides a difference. Let's say the state is not fine with that. Let's say the state thinks it's great that you provide that education on your own, and it might be that if we have certain kinds of tuition assistance, you would be included in that. But the state has this same idea, honestly, that Oklahoma has, which is these schools are supposed to be public. And they're supposed to sort of look like public schools. And this one really doesn't. So the first thing I would say is just the label of public school clearly can't do the work. I'm not suggesting that. Then you would go to a different framework of analysis that would be under this court's case law that includes Fulton, Smith, that line of cases that would ask all sorts of questions that would be highly fact-dependent, such as is it a neutral law of general applicability? To what extent does it burden the religious beliefs, et cetera, et cetera? And is there a compelling interest potentially? Well, this definitely burdens the religious beliefs. I mean, this is what this community thinks an education is all about, and this is what this community thinks is critically important to train their young people in the tenets of their religious practice and so forth. Sure, and so I can't tell you standing here today exactly how that or any other hypothetical case would come about, but what I can tell you is that Carson and Espinoza and a whole series of cases, including Zellman, say you can't take imagined hypothetical downstream questions and let them drive and justify front-end religious beliefs. Well, I don't have to imagine very hard to come up with a hundred hypotheticals like this because religious communities are really different in this country and are often extremely different from secular communities in terms of the education that they think is important for their young people and is critically important to their faith. I mean, nobody would say that the kind of instruction that exists in the kind of school that I laid out, which there are many of, is not critically important to the faith and to the training of young people in the faith according to that community. Sure, and that was true in Carson, and what this court said is that when you open a program to other private organizations, you can't exclude the religious. And so that's how the court dealt with it in Carson. The other thing I would point out, and my friend Mr. Campbell pointed out... So the state has what it considered a charter school system, which was basically offering a kind of education that it was familiar with, that it applied curricular and testing and standards to. It wanted to increase curricular flexibility. It did not want to start funding every religious school in the country, and now you're saying to that state, you know, yes, you have to go fund the yeshiva that I described. Yes, you have to go fund the madras. Yes, you have to go fund da-da-da-da-da-da-da-da-da if you want to have this program at all. Well, I don't think I'm saying that, Your Honor. I'm saying there's a different framework of analysis. That analysis would have to be applied. But the other thing I would say is that a state doesn't have to open up an educational program to private organizations. The court has said that consistently in this case law. And so no one is saying that a state is compelled to open up these programs and to invite in the religious. What they're saying is that what the free exercise clause says is that if you do open it up, then you can't exclude the religious because they're religious, neither because of their status or because of their use. Thank you. Thank you. Justice Gorsuch? Just on some of those hypotheticals, Mr. McKinley, would it be a neutral and generally applicable rule and therefore compliant with Fulton and Smith to say if you want to be a charter school, you have to teach math, reading, science, and specify testing at grade level proficiency? So the way you've described it, I think so. And certainly my client has not objected to those things. The record indicates that that is certainly part of their curricular design. And even absent Smith, still have to ask in strict scrutiny whether the government has compelling interests. Might it have one there? I think it might have one there, sure, especially in a contracting setting where the government is providing funds for the education of youth and they want to make sure that certain minimum standards are met. I do think that that would probably be a compelling government interest. Thank you. Thank you. Justice Kavanaugh? With Justice Kagan, I think you were talking about the nondiscrimination provision, and you said you didn't strike it out and you had more. I mean, I think there's more to that answer. Yeah, sure. Can you just tell us what happened? Yeah, so what happened was we agreed to abide by all applicable laws, which means federal and state laws, including anti-discrimination laws. What was added to the contract is essentially constitutional truism, that as a private religious organization, we possess rights under the free exercise clause, the church autonomy doctrine, the ministerial exception, which this court has rooted in the church autonomy doctrine. And so all that we were trying to make clear and all the state was recognizing is that we were not giving away those rights by virtue of agreeing to this contract. A number of other states, in fact, I think all of them, have a similar kind of program. What should we make of that? So what you should make of it is every single state has a choice as to whether or not they want to have the program, whether or not they want to invite private organizations in, and how they design the program, particularly the extent to which they exercise state control over any charter schools. And so the state decides that it wants to have government entity charter schools, it can do so. And so I don't think that in any way you're not deciding the platonic form of charter schools. You're not deciding the platonic form of public schools here. States have the ability to design their program. This court has repeatedly made clear that when they design it to invite private actors in, they can't exclude the religious. But it's also made clear- But they've been around for a while without that. But I think that's, I mean, in part a result of this court's case law that suggested that it wouldn't be permissible. But, you know, after Trinity, Lutheran, and Espinoza, and then Carson, you know, I think there's a different outcome. And are there language-focused charter schools in Oklahoma that you're aware of? Yes, yes, there are language immersion schools. I think one example is I believe it's called the Lamond School. Thank you. Thank you. Justice Jackson? So I guess I'm still stuck on trying to understand what you mean by the state has the ability to organize or set up the program in the way that it wants the program. So apparently they can't decide the program to be funding schools that are nonsectarian. That's correct. That's the teaching of this court's case law. I don't see that that's the teaching of the case law. I see that whatever the program is, it has to be available to religious people. But what if the state says my program is, you know, murals that are not religious or schools that are not religious? That's the part that I'm really confused about because your free exercise argument is based on this discrimination principle, which I totally get. But if you're striking out provisions of the contract, then it seems to me that you are not seeking the same public benefit that everyone else is getting. The state says here's our program, and we're laying out all the provisions in a contract, and anyone who would like to have this contract, you're welcome. And we're not excluding religious people. We're not excluding any people. But here are the terms. And you say, ah, but there's a term in here that says you have to be nonsectarian. And I do want to point out that that term is actually in the federal law because the state of Oklahoma defines its charter school on the basis of what federal law has defined as a charter school. It's a public school created or adapted by a developer, private organization. And to qualify, the school must not charge tuition and must be nonsectarian in its programs, admissions, policies, employment practices, and all other operations. And so that's like what it is. And so it just seems to me very hard to accept the discrimination principle that you're putting forward when you come in and say we don't want that contract. We want one that we've tailored to strike out some of the terms that you have put in here. So with respect, I think the argument you're articulating is precisely the one that was rejected in Carson, which says you can't define the program by saying it has to be something that's nonsectarian because that merely says that by doing so, you're essentially building into the definition a way to discriminate in violation. So the federal law is unconstitutional. That sets up charter schools and includes as a term the nonsectarian status. So I won't speak for my friend who I think will be up here shortly, but my understanding is that their view is that that particular term is no longer enforceable, and I think there's an OLC opinion that essentially says as much after Trinity Lutheran. When Carson, I have to go back and take a close look at Carson, but were they changing the terms of the actual benefit that was being offered or were they saying that religious people have to have access to that benefit as it exists? So my understanding of Maine's law and Carson is that like Oklahoma's law, it had a provision that said that no sectarian institution could participate, and then Maine articulated that. No, that's the no sectarian institution can have this contract. Right. I agree with that. Right, but you may remember that one of the critical questions in Carson is whether there's a status use distinction, and this court very definitively said that there's not, and I think that goes directly to Your Honor's questions. Thank you. Thank you. Thank you, Counsel. General Sauer? Mr. Chief Justice, and may it please the Court, charter schools like St. Isidore are not part of the Oklahoma government, and they are not engaged in state action. They are created by private parties applying to public or private sponsors, and they are controlled by privately appointed directors. Participation in charter schools is mediated through two layers of private choice, both of the applicants who create the schools and the parents who choose to send their children to them. Oklahoma does not control their programs, staffing, or curriculum. Providing education through charter schools is not a traditional and exclusive public function, and their control by privately appointed directors refutes any suggestion of public entwinement. The values of private innovation, independence, and private choice lie at the heart of this charter school program, and they call for the application of the free exercise clause here. I welcome the Court's questions. General, below in the state courts, state action seemed to play a considerable role, but in your brief you said it's not applicable here. Would you elaborate on that? Absolutely, Justice Thomas. We've taken the position that viewing this through the lens of private actors engaged in state action is not the appropriate kind of framework to view it under, and actually I think we have clear agreement from that from the respondent in page 18 of their brief where they say that is not the correct framework. Obviously, the Oklahoma Supreme Court did rely on those cases most as to entwinement and also as to traditional exclusive public function, but the point that we make is there's not a clear mapping onto the two concepts of do you have constitutional rights of your own, and are you engaged in state action with respect to the constitutional rights of others? So in Linn Key, for example, recently, and in Garcetti and that line of cases, there's a recognition that those are conceptually two distinct questions, and that's why we think that that's really not the proper framework the court should, and the respondents do kind of put all their chips on, so to speak, the question of are these actual governmental actors, are they governmental schools? Sorry, not actors. Are they, in fact, governmental schools? And there you're dealing with the creation, control, and dissolution factors which all favor a finding that they are not governmental actors. General, what do we do that two years ago in Peltzer v. Charter School, the SG argued the opposite position you're taking today, that charter schools are public schools and state actors? I'd say two things. There's three things in response to that. First of all, that case was not a religious free exercise case, so that doesn't matter. It doesn't matter. Why were they state actors there and not state actors here? And as to my second point, as I said to Justice Thomas, we don't think that that's really the correct framework to apply here. So what changed? What changed? Well, for example- What changes? There's a new administration. But tell me something. Given your new framing, I presume that you're conceding now publicly that the federal charter school program, as it's been run up until now, is unconstitutional? Not exactly. So there are four, if I may describe that. There are kind of four buckets in that statute. There's programs and operations, which we think is this case, and there we are conceding that our argument here implies that there has to be a free exercise exception for those two. Then there's a reference to employment policies, and we think that's already governed by the ministerial exception from Hosanna Tabor and Our Lady of Guadalupe. Then the federal statute says you have to be kind of open to all in your admissions policies, and we do not concede that there's a constitutional problem there. We contend that that is defensible. For example, if a religious school wanted to come in and say, you know, hey, our religion says we can only teach members of our own faith, we don't concede that that would be constitutionally mandated by Carson. And what's the difference? I would say there's three differences. One is in that circumstance you would have a Smith analysis that, as Mr. Campbell said, looks very different. Open to all comers is a neutral and generally applicable criteria. Contrast that to the criteria in this case where the discriminatory characteristic, no religious need apply, is right there in the discrimination. So they haven't even made a Smith argument here. It's not no religious need apply. It's nonsectarian instruction. Nonsectarian to me means no religions, but in any event, our position is. But the point is, to the extent it does mean that, it's because religious practice, religious exercise requires a certain, you know, because religious belief implies a certain kind of religious conduct. And here, the same argument would be met. My religious belief requires a certain kind of religious conduct, which is that I only teach members of my own faith. Suffice to say that under the Smith analysis, at least those seem very, very different, and the government will argue that those are distinct cases. Secondly, even if the court is not inclined to apply Smith, the argument that there would be a compelling state interest in that Oklahoma or the federal government could say this is open to every student. The options are being offered to every student across the board without any discrimination. There would be a strong argument that that would be a compelling state interest, even if we weren't looking at the neutral and generally applicable framework. And thirdly, if you look at it through the lens of the funding cases like USAID, the argument that what we're funding here is a program that's open to all is a much stronger argument than the argument that what we're funding here is a program we don't let religious schools participate. So for those three reasons, we would continue to defend the open to all admissions policies. General Fowler, can I just ask you, because as I understood your response to Justice Sotomayor, you are saying that the portion of the federal law that indicates it to qualify as a charter school, you have to be nonsectarian in your programs. You're saying there is a constitutional problem with that, or at least there has to be a free exercise exception. Is that right? Exactly. We think that's the natural extension of the 2020... If there is a free exercise exception, then I think are you saying that strict scrutiny is triggered as a result of that? And can you speak to why avoiding an establishment cause problem would not be a compelling interest of the state in including this kind of clause in their charter school program? As Mr. Campbell argued, we think that's squarely foreclosed by Carson, actually by Trinity Lutheran and Espinosa and Carson, all of which say protecting... Say it's not a compelling state interest? To protect establishment interests more fiercely than the federal establishment clause actually protects them is not a compelling state interest. I feel like that's completely circular, and maybe I'm wrong about it, but I'm just trying to understand it. How does that account for a state's concern that unless they are setting up a series of nonsectarian programs, they would be funding religious activities in a way that the Constitution doesn't allow? I appreciate the Trinity Lutheran scenario and it not being a compelling interest to prevent religious schools from doing exactly the same thing as everybody else is doing in this program. But I'm actually drawing a distinction, as you've heard me say before, that what the religious schools are asking for here is not exactly the same thing. And so to the extent that the state is saying we see a distinction between religious schools which require all of these religious rites and proselytize and do whatever, we see a distinction between those kinds of schools and public schools and we only want to set up public schools because our compelling interest is to prevent the entanglement of the state with funding those kinds of schools. To address that, the court should look and see whether there is an actual establishment clause violation here because the principle that governs here would be genuine and independent private choice asserted in Zelman and reaffirmed in Trinity Lutheran, Espinosa, and Carson. Here participation in the program is mediated through two layers of private choice. Both the schools decide to participate or the private entities decide to participate. And more fundamentally, the parents decide to send their kids there. As both, I think, both attorneys argue, there is the option, the backstop option, of the traditional government-run public schools. Under that set of circumstances, there is, I think, not a plausible claim that there is an actual direct establishment clause violation so much so that I believe that respondents on this point hinge their establishment clause argument entirely on their government entity argument. So they, I sense, as I read it, can see that there's only establishment clause problem if these actually are government entities. There they run into LeBron and they run into Rental Baker and they run into cases like that. Counsel, to what extent can the state impose requirements on such schools? You know, you have to teach Oklahoma State history, you have to teach this, this, and this. Those all appear to be, obviously there could be, you know, unique facts, but those in general would appear to be neutral, generally applicable criteria that they could impose. And if there was a free exercise claim in response to that, that, oh, our religion doesn't allow us to teach evolution, if that's neutral and generally applicable, there'd be a strong argument that there's no free exercise opt-out there. In addition to that, if you're not applying the Smith framework, the state would have to argue we have a compelling interest in making sure people understand the theory of evolution so they could pass the standardized test and so forth, and the court would have to assess it through that lens. Does the extent of that involvement affect the analysis in terms of whether there's too much state involvement to view it as a truly private charter school or a truly religious charter school? I don't think so, if I understand the question. The way that I would frame it is under Trinidad and Luther and Carson and Espinoza, you have a neutral and generally applicable program, and what you're letting into that program is something that's very like the school in Rendell Baker, where there is detailed and extensive regulation of that school, but nevertheless it is not a private actor. Thank you. Sorry, it's not a state actor. It is a private actor. Justice Thomas? Justice Alito? Well, on the issue of intensive state supervision, would you address the entwinement argument that the Oklahoma Supreme Court thought was persuasive? We think that argument is quite unpersuasive, and here's why. The entwinement argument, for example, they rely solely on Brentwood Academy, and Brentwood Academy is a case where public officials were 86% of the membership of the State Athletic Association, and they appointed other public officials to control it. So Brentwood Academy is very similar to the government-controlled cases like Mohila and Amtrak, where the government's controlling everything. There was a little private involvement to the tune of 14%, but that's very different here. We're talking at the polar opposite of that, where every single director is privately controlled, and under the cases we cited, Sherry Cotton Mills, Bank of America, or Bank of the United States, all the way up through Biden against Nebraska. The situation is the opposite of what the court has held to be. This is a governmental actor on that crucial control factor. Thank you. Justice Sotomayor? No, thank you. Justice Kagan? General, do you agree that if, thinking about the Chief Justice's question, that if the state can apply these various sort of curricular requirements and say, you know, yes, we're just going to insist that you do this, notwithstanding that it's against your religious belief, against your religious practice, what you're going to get, at least in result, is real distinctions between the religions that can and cannot benefit from what you're arguing. Wouldn't you agree with that? I don't know enough about possible religious applicants to directly address that. I mean, I've just got to think that there are religions that are going to have no problems dealing with all the various curricular requirements, and religions that are going to have very severe problems dealing with all the curricular requirements, and we're going to end up in a state of the world which has kind of, you know, accepted establishment religions and more different, more fundamentalist, more, you know, use the adjective you want, religions that seem peculiar to many eyes, but are deeply felt. I'd be very surprised if that were the practical outcome, because I'd be surprised if there are religions who want to operate essentially charter schools who are unwilling to. There's a big incentive to operate in charter schools if everything is funded for you. I mean, so I think that there are going to be, there's a line out the door if you can do this consistent with your religious belief. All I'm suggesting to you is this notion that the state can do this while still maintaining all its various curricular requirements, and either that sort of fantasy land, given the state of religious belief and religious practice in this world, or if it's not, it's only because what's going to result is treating, shall we call them, majoritarian religions very differently from minority religions. First, I'd say that if there is, in fact, a line out the door, so to speak, that line out the door will increase the diversity of options for parents and students in states that have programs that are similar to Oklahoma, whether or not it will result in some kind of disfavorment for whatever the opposite of majoritarian is, non-majoritarian religions. I can't speak to that. Let me just ask you one quick last question and make sure that I understand what part of the federal statute you're giving up today. As I understand it, the federal law conditions money on recipients being public schools that are non-sectarian in their programs, admissions policies, employment practices, and all other operations. So that's the part of the federal statute that I focused on, and you're saying today that that is so patently unconstitutional that you will not defend that statute. I would give the same qualifications I gave earlier. Our position today would be that programs and operations, under the logic of Carson and Trinity Lutheran and Espinoza, programs and operations would need a free exercise exception. The government's already determined in 2020 after Trinity Lutheran that affiliation that is referred to in that statute also can't survive after Trinity Lutheran. When it comes to admissions policies, which is also referred to in the statute, we defend that. Got it. Thank you. Justice Gorsuch? If a state wanted to avoid the choice issue here by making charter schools government entities, what would it have to do? Certainly one way it could do it is create them directly by statute and have them controlled by directors who are themselves public officials. My understanding is that California's system is somewhat like that. There may well be other states where they really are government entities. They're part of the government here where they're privately controlled directors, where they are created by a process that is initiated by a private applicant, and sometimes the application doesn't even go to a public actor. We are, in a sense, the polar opposite of cases like Mojito and Biden against Nebraska. So holding here, this may apply in some states, it may not apply in others. Exactly right, and states would have the option to restructure their programs if they wanted to have these be government-run entities. Justice Kavanaugh? To make sure I understand the limits of the federal government's position, the state can't favor one religion over another in approving or allowing charter schools, correct? Absolutely correct. And also the state can't favor religion generally over secular counterparts in allowing or approving charter schools as well. In other words, if it has charter schools, it must allow secular and religious, correct?  That's it, thank you. Justice Jackson? So I'm just trying to understand your establishment clause, nothing to see here, position. St. Isidore's is pretty clear about its mission. Its members, as you've said, are private individuals, an archbishop and a bishop. It would require the students to, quote, spend time in religious instruction and activities and permit state spending in direct support of religious curriculum and activities. So are you saying that the religious charter schools use of public funds to support proselytization, which the school says it intends to do, is not an establishment clause problem? Like, we wouldn't have to look at, like, where the funding is going, even if the school says, yes, we're getting money from the state and we are turning around and buying Bibles and instructing the students and make, you know, no establishment clause problem. The principle of genuine, independent, private choice that goes from Zelman to Carson would address that directly. Here, the parents are choosing with open eyes to take their kid to the religious charter school. They are understanding we may be subject to problems. So you're saying the establishment clause only does work in a situation in which a person is being forced to engage in religious activities if there's a choice somehow? No, I'm saying where state funding is going through two religious schools on an even footing through where public and private schools can apply for the funding, as you see here. And in addition to that, the decision whether or not to go to the religious school or the non-religious school lies in the hands of the parents. That is genuine, independent, private choice, which I don't think is disputed in this case, and therefore that would not violate the establishment clause. Once that's the position, then... And one final question. So Justice Kavanaugh explored with you about favoring one religion over another. I'm wondering whether, as a practical matter, that can happen in a situation like this one where the board can only sponsor five charter schools in a year, for example. I mean, doesn't the board have to determine what if we have six applicants, or seven, from different religions? Would we be in a situation in which the board is picking and choosing among them? The board would have to use religiously neutral criteria, and my understanding is the board says it does that. But wouldn't it... I understand there are criteria for picking, but at the end of the day, to the extent that we only have established charter schools for certain religions, wouldn't the effect of that be to establish a certain religion? Do you see what I'm saying? The effect would not be constitutionally problematic if the board uses, as it says it does, religiously neutral criteria in selecting who are the best applicants. Thank you. Thank you, Counsel. Mr. Garr? Thank you, Mr. Chief Justice, and may it please the Court. Three considerations distinguish this case from the Trinity Lutheran Trilogy and require affirmance. First, charter schools are public schools. They bear all the hallmarks of the criteria this Court recognized in Carson, are established, just like the Court said in Carson, states could to expand educational opportunities within the public school system, and have been recognized as, and indeed are required to be, public schools by the Congress of the United States and the legislatures of 47 states. Second, teaching religion as truth in public schools is not allowed. St. Isidore has made clear that that's exactly what it wants to do in infusing its school day with the teachings of Jesus Christ. Oklahoma respects and promotes, through vouchers and other means, the abilities of families to secure such an education in a private school. But this Court has held, in a series of landmark precedents, not challenged by anyone here, that the Establishment Clause bars such devotional teaching in public schools. And third, petitioners are not seeking access to Oklahoma's program on equals terms. They seek a special status, the right to establish a religious charter school, plus an exemption from the nondiscrimination requirements that apply to every other charter school and that distinguish public schools from private schools. The charter school movement is one of the modern-day success stories of public education. Presidents, governors, and legislators from across the country have recognized that charter schools have improved educational opportunities and outcomes for millions of Americans, especially those from disadvantaged backgrounds, within the public school system. A ruling for petitioners would not only lead to the creation of the nation's first religious public school, it would render unconstitutional, as my friend from the Solicitor General acknowledged, the federal charter school program and immediately the laws of 47 states across this country, and it would result in the astounding rule that states not only may but must fund and create public religious schools, an astounding reversal from this Court's time-honored precedence. I welcome the Court's questions. Mr. Garr, would you elaborate on your statement that public charter schools must, by force, be public? Of course, Your Honor. They bear all the hallmarks this Court has recognized. They're free, open to all, funded by taxpayers, controlled by the state with respect to their curriculum, and I hope we can talk about that during this argument. They're required to meet non-discrimination laws, and they're non-sectarian. All the features that this Court recognized in Carson and had little difficulty applying. So, in your... in the way you look at this case, there is no way that St. Isidore can participate in the charter program and remain private. That's right. That's not me saying it. It's the state saying it. And the Oklahoma Supreme Court made this clear. I mean, we've had a lot of statements that St. Isidore is a private institution and not a public school. I mean, what the Oklahoma Supreme Court said was St. Isidore, I'm quoting here, came into existence through the charter with the state and will function as a component of the state's public school system. That's at page 30A of the appendix. The state court also said that this is a legislature-created entity. It's a surrogate of the state. It's a public school. This court has a lot of authority, but I don't think it has the authority to... I think the argument that St. Isidore and the board are making is that it's a private entity that is participating in a state program. It was not created by the state program. Right. And state law, as interpreted by the Oklahoma Supreme Court, repeats that. And with respect, I don't think this court can second-guess that. And let me talk about the state law. I mean, to put aside what the Oklahoma Supreme Court said, state law in 3.132.2 says that charter schools are established as an entity. The Oklahoma Administrative Code, 210.40.87.5b, says, quote, establishment of a new charter school. A new charter school is established when a charter school application is approved. And there were questions about how St. Isidore has changed the application here. I mean, it did so with respect to the nondiscrimination requirements. And let me quote in a couple of ways. On pages 295 to 96 of the respondent appendix, in a statement of assurance, it said it would apply with federal and state law, quote, with priority given to the Catholic Church's understanding of itself and its rights and its obligations pursuant to the Code of Canon Law and the Catechism of the Catholic Church. That's one. And then on page 332A of the respondent's appendix, quote, the school complies with all applicable state and federal laws and statutes to the extent the teachings of the Catholic Church allow. And then, with respect, another important change is they completely changed the definition of public schools. If you look at page 521A of the respondent's appendix, that's the charter school template that the state provides, and it defines a public school as a school,  established by the legislature that's free and supported by the state. And what they described it as at page 4A in their application of the respondent's appendix is the charter school is a privately operated not-for-profit entity. So that's what they're making up. Under state law, just not only Oklahoma, North Dakota just became the 40th state in the Union to recognize charter schools as public schools, as the Congress of the United States has recognized. What do you do with Fulton, the state agency that refused to deal with the religious adoption services? We held they couldn't engage in that discrimination. Sure. How is that different from what we have here? You have an education program, and you want to not allow them to participate with a religious entity. So I think it's fundamentally different. I mean, and our position doesn't threaten faith-based contractors at all. The adoption agency in Fulton wasn't established by the state through legislative action. It wasn't fully funded by the state. It wasn't controlled by the state. I mean, the charter schools here are controlled in fundamental ways that my friends have glossed over this morning. I mean, with respect to curriculum, there's front-end and back-end requirements. They have to show as part of their application that they will meet the state's academic standards, which are highly reticulated down to the point that they have to teach Reagan's tear-down-the-wall speech in U.S. history or dangling modifiers in ninth-grade English. They can't teach what other public schools can't teach, which is critical race or gender theories. I don't think you're a little far afield, I think, from the chief's question, at least as I understand it, because I think a concern here is that religiously operated senior homes or food banks or foster care agencies or adoption agencies or homeless shelters, many of which get substantial funding from the government, would potentially, under your theory, this is the concern, become state actors and thus not be able to exercise their religion. So can you explain why the principle that you're articulating would not have that result? So in none of those cases do you have contractees that actually become a part of the state as charter schools are established. Sorry. I just want you to come back. When you say a part of the state, I want to drill down on that. Well, that they're established by the state, the legislature, that they become a component to the state system, which is what the Oklahoma Supreme Court held here. I want to drill down on that a little further, too, if it's all right. So in Fulton, you had Catholic Charities, which had to be incorporated. It was incorporated separately, incorporated under state law, and could only provide adoption services with incredible oversight from the city. They can't take foster children in. They can't place them without comprehensive governmental involvement. Again, what's the difference? How do we draw that line so that we capture public schools on your account, but we don't capture, and you seem to say we shouldn't capture, entities like Fulton? And by the way, I'm delighted to hear you're still teaching the problems of dangling modifiers in Oklahoma schools. So again, Your Honor, the adoption agencies and other faith-based contractors are not being established by the state as part of the system. Well, they have to be incorporated, and they have to be approved. And every parent has to be, that they come forward with, has to be satisfied certain criteria that the state, I mean, it's comprehensive regulation. Oklahoma has a general corporations law, too, Your Honor. And what is going on in the charter school program is fundamentally different. And look, even in the- What's the test, I guess, is what I'm asking, Mr. Garr, that you'd have us apply? Because we have to have a test to distinguish these two buckets of cases, right? Well, I think we're here- What's the test? I think, first of all, here we're dealing with public schools. And I think we can talk about the other examples, but I mean, I think we're dealing with public schools. This court in Carson- I appreciate that point. But you've urged us to say public schools are different from other contractors like Catholic Charities in Fulton. And so we need a test, a legal test. Is it LeBron? Is that where you'd have us look? I think you can look at- I mean, look, I think that public schools bear all the hallmarks of government entities. And we can go down the list. They're clearly- Is it creation and control? Are those the correct things that we should be looking at? I know you say we shouldn't look at state action doctrine. I mean, is it those two factors? I think those, I can give you the five factors that this court looked to in LeBron. Creation, which I think is clearly met here because the Oklahoma Supreme Court has interpreted Oklahoma law- I'll let you go through that. I don't mean to cut you off. I just want to make sure we're on the same page to start with, which is we should look to LeBron to make this decision. I think this court can decide this case by saying that charter schools are public schools in all the ways that people have always recognized and that this court has recognized and that you can't fund an entity to teach religion as truth in public schools. I also think you can look at the government entity precedents and the state actor precedents and come to the same conclusion. And I'll go through the factors in government- Please, I didn't mean to stop you. Okay, creation. And the Oklahoma Supreme Court decision, in this case Oklahoma law, answers that. The public charter schools are created by the legislature. They come into existence and they become part of the state public school system. That's what the Oklahoma Supreme Court said at page 30. There's- This is not the Catholic Church that's being given this. It's the created new charter schools. That's exactly right. That's exactly right. Number two, state supervision and control. And maybe I can bracket that. We can come back to that because that's an important one. The state can repeal or close the institution, which this court acknowledged in the Biden case and other cases, and that's clearly the case here. The state can close charter schools, unlike private schools. Number four, the state has denominated the entity as a public entity. We're not saying that labels decide this case, but it's significant that the state has regarded charter schools as public schools, as has the Congress of the United States and the legislatures of every other state. It would be sort of remarkable for this court to say that everyone else was wrong on that. And five, the court in Biden looked to- in LeBron looked to public understanding. And here, again, public understanding is that charter schools are public schools, just as Congress and every state has recognized. So going back to state control- Mr. Garth, can I just- so drilling down on that because I think- Supervision and control. Sorry? Just let him finish on supervision and control. Go ahead. So supervision and control. There's extensive oversight of curriculum in a way that doesn't remotely exist for private schools. At the front end, in terms of the application process, where you have to identify the curriculum, applications are often rejected because of the curriculum. Then you have to lay out that you'll meet a number of performance indicators that are set forth at pages 18 to- 19 to 20 of our statutory addendum. And you have to show that your curriculum will align with the state's academic standards, which are highly reticulated. And then once you do that, every year you are evaluated for compliance with those factors. Academic performance, you're evaluated for financial performance, you're audited, all in ways in which doesn't remotely resemble what's going on with private school, which is hands-off. The board itself- and there's been a lot of discussion about the governing board- that governing board is reviewed at the outset in the application, what it's going to be like, who's going to be on it, and then it's evaluated every year as to board compliance. Boards that are deficient or malfeasance can and have been removed. They're also subject to the general assessment test that apply to public schools, which doesn't apply to private schools. Mr. Clark, can I just sort of summarize this by saying that I think what you're saying is that just like traditional public schools, charter schools are a creation and creature of the state that distinguish them from things like the other very interesting and good examples that were raised- nursing homes, adoption agencies, hospitals. Those things can actually exist outside of the state, although they have to be licensed in the state, just like a private school would have to be licensed. Obviously, there's going to be some state involvement to authorize these private people to set up this private entity, but it seems to me that you're saying with all of these different factors and the way in which you're conceiving of this, a public school and these charter schools are creatures of the state in a different way. Yes. And I don't think when this court decided Fulton, it thought it was imposing new requirements on public schools. And with respect to supervision and control, if I could just make one more point, federal law requires this. The charter school program requires that charter schools, quote, be operated under public supervision and direction. This is 7221I2B of the statute. And this is really important. I mean, the federal charter school program has been implemented for decades. Billions of dollars have been dispensed by the federal government. All the religious school is saying is don't exclude us on account of our religion. I mean, if you go and apply to be a charter school and you're an environmental studies school or you're a science-based school or you're a Chinese immersion school or you're an English grammar-focused school, you can get in. And then you come in and you say, oh, we're a religious school. It's like, oh, no. Can't do that. That's too much. That's scary. We're not going to do that. And our cases have made very clear, and I think those are some of the most important cases we've had, of saying you can't treat religious people and religious institutions and religious speech as second class in the United States. And when you have a program that's open to all comers except religion, no, we can't do that. We can do everything else. That seems like rank discrimination against religion. And that's the concern that I think you need to deal with here. Sure. And certainly, as we've said in our brief, we recognize that principle and we respect it. But as this court itself said in the Carson case, states may maintain strictly secular public schools. And that's all the state of Oklahoma has done here. All we're saying is that we're not going to create, fund, and control the curriculum of schools that want to teach religion as truth. I think as Justice Gorsuch pointed out earlier, a state could easily design a different kind of charter school system where they really were a government-run, government-controlled, government-created, government-established charter schools. That's not what some states have. They open it up to private people to apply. And then when you say to someone, you're no good because you're religious, they're not asking, and to make the point, they're not asking for special treatment. They're not asking for favoritism. They're just saying, don't treat us worse because we're religious. That just seems like a core principle. Again, you could redesign this pretty easily as Justice Gorsuch was talking about in the California example. I don't know the details, though. But that's not how it's done. Well, in terms of creation and control, Oklahoma has that, as do all the other states with charter schools. And if you have any questions about control, let me go through that. I mean, I think the one thing that has been seized upon is board governance. And on that, I don't think that that can make the difference because under LeBron in those cases, the ultimate question is state control. Here you have state control. States are auditing. Charter schools are involved in curriculum. They have to be, material changes have to be approved. With respect to the boards, those boards are also monitored. The application has to describe the board. The board is evaluated each year for board governance. Boards that don't operate correctly can and have been removed. Charter school board members themselves have to sit on the governing board for meetings. The governing boards for charter schools are regarded as government bodies under state, as we've shown in opinions. So the state retains complete control up to the point that they can close it. So I don't understand, really, this created and creature of the state. The pavement or wood chip program in Trinity Lutheran was created and controlled by the state, yet we held that you couldn't exclude religious schools. Tuition program in Espinosa. Creature and created by the state. Yet you couldn't exclude religious participants. The same in Carson. The same in Fulton. Is your test, it's a creation and creature of the state because all of those were, and we held that under the First Amendment, you couldn't exclude people because of their religious belief. Well, the programs were, of course. But what we're talking about is the applicants. And here I think that the creation point goes to the government entity point. I'm not following. The applicants in those cases were religiously affiliated. Well, they're parents, for example, in Carson or Espinosa. In Trinity Lutheran, it was the church itself. But as to creation, this goes to whether or not this is a government entity. And under state law, charter schools become into existence when they are approved and become part of the state and they're established by the legislature. I mean, that's what Oklahoma Supreme Court interpreted Oklahoma law to mean. And that's the way that, you know, virtually every state in the country and the Congress have understood charter schools. Mr. Clark, I'm sorry. Finish your sentence. I'm sorry. Just wait a minute. No, this is really a point of information to start out at least. The point of the charter school program, as I understand it, is to confer a lot of flexibility on the charter schools so that they offer a real alternative to the public schools, to what you call the public schools. Isn't that true? Yes and no. I mean, I think a real alternative... There's no question that charter schools want to harness private ingenuity. And they do that. They say, you can come to us with the applications, but we're going to rigorously scrutinize those applications. We're going to make sure that you meet our curriculum requirements. We're going to evaluate you every year. And if you try to change your curriculum, you have to come back and get approval. Well, but they offer, they're allowed to offer a curriculum. Yes, it has to meet certain state requirements, but the focus of the curriculum can be quite different from the public school. And I thought that was understood to be one of their virtues. The charter schools have to meet the academic standards that public schools have to meet, again, down to the level of dangling modifiers in ninth grade English class. And I think what's different is you can imagine a school that's built around performing arts or sports, as some charter schools are, or language. You can build a school around that model, but it has to have all the same academic curriculum requirements. Can a charter school seek to inculcate a secular viewpoint, not just a secular viewpoint, a particular secular viewpoint? I mean, with respect, I don't know what you mean by that. I mean, charter schools are traditional public schools, Ken, yes. I'll take your example of a school that focuses on music. So could a school that focuses on music teach only the music composed by dead white men, Brahms, Bach, Beethoven, and Brahms, and all the rest? Could they do that? I think what a traditional public school could, but what charter schools can't. Could a school that focuses on music say, no, we're not going to do that. We're going to include jazz and hip-hop and rap and music from non-European countries. Could they do that? I think they probably could do that. Could a school say, we're going to be a LGBTQ plus friendly school. So that the books that elementary school children are going to read are going to have lots of LGBTQ plus characters, same-sex couples, and they are going to send the message that this is a perfectly legitimate lifestyle. They're going to tell the little kids if you, your parents may say you're a boy or a girl, but that doesn't mean you really are a boy or a girl. Could they do that? No, and the reason why they couldn't is because state law prohibits the teaching of gender studies or race in public schools, traditional public schools and charter schools. I'll give you another example. Could a school say, we're a progressive school and we're going to do everything the state wants you to do, but we're going to teach history from the 1619 project standpoint? No, because they'd have to meet the state's academic standards and that would not be allowed. Why would that not be allowed? We're going to make sure students know a lot about slavery and Jim Crow and the treatment of Native Americans. They can't do that? They can't emphasize that? Just like a traditional public school, there would be some leeway there, but with respect, they certainly couldn't focus their curriculum just on that. And let me give you the citation so you can look at the academic standards. On the other hand, I don't want this to be one-sided, so suppose a school says, we're going to teach American history like the way it was taught in 1955. So we're going to celebrate the founding fathers and we're not going to say anything about their shortcomings and we're not going to say a whole lot about the dark episodes in American history. Could they do that? No. Traditional Oklahoma public schools could not do that and charter schools could not do that. Where does it say that? So it says that in 3-34B12 of the charter school statute, it says that the curriculum must be aligned with state academic standards. And then if you go to Oklahoma Administrative Code 210.15-3-1, it spells out in detail the criteria for curriculum. And we've got other sites in our brief on that. And they're controlled in the same way that public schools are. And that's the point, Justice Alito. Charter schools are like public schools, traditional public schools. When it comes to curriculum, they're controlled as to curriculum and that completely distinguishes private schools. My friend was asked, how are private schools different? I think his answer left a lot to be desired here on that. And let me just walk through how they're different, Justice Kavanaugh. Number one, private schools can open without any state approval. They don't even have to be accredited. Number two, there are no requirements or supervision of curriculum for private schools. The only practical limit is what employers want or what colleges want. Number three, they can charge tuition. Number four, they can restrict admissions. Number five, they're not subject to general state assessment tests. Number six, they're not subject to nearly the reporting requirements or oversight as public schools. Number seven, they're not subject to state rules regarding student discipline, civil rights, health, and on down the line. And number eight, there's no process for closing them, short of consumer fraud or fraud. I mean, private schools are fundamentally different. What we're talking about here is a school that is closely regulated, that is part of the public school system. And this court, again, and Carson said that states can expand their public schools. That's what charter schools are. They were meant to expand the public school options for families across the country, and they've been successful, especially for families from disadvantaged backgrounds. And if this court holds that the Oklahoma program is unconstitutional, then it immediately renders the charter school laws in 47 states unconstitutional. Well, that's a little bit. This would be expanding the options, not contracting the options. With respect, that's not the right way to look at it because charter schools were built on the premise that they're public schools, and that was by design because people wanted to expand access to public schools and people understand that religion cannot be taught. Well, they're built on the idea that innovative approaches to education would increase the quality of education in a particular community or at least provide options for particular focuses and overall improve the educational quality in the state. You don't have to believe me. You can just look at the fact that Congress, from the beginning of the federal charter school program in 1994, in every single state, has made clear that charter schools are to be public schools and run as public schools. And that's the way it's always been understood. And if this court rules in favor of petitioners here, there are going to be some states that ramp it up, no question, but there are going to be other states that say we want out. And each state can make its own decision, but this is going to have a dramatic effect on charter schools across the country. And just think of the federal charter school program on its own. I don't think... You can't just say, like, oh, well, just, you know, grant... Well, it's not... The premise of that was that, at that point, it was considered constitutional to discriminate against religious entities. And that, you know, some of our case law has changed that and said, no, it's not constitutional to discriminate against private religion. And that's... I mean, the theory... You'll probably disagree with my characterization there. I understand that, but... Well, I mean... It's a different constitutional understanding. I encourage you to read the OLC opinion because what that opinion says is it focuses on the affiliation requirement, that you could have a school that potentially is a religious entity, wants to run a secular program, and that that wouldn't be allowed. The OLC opinion itself goes out of its way to make clear that it wasn't saying that you could have charter schools running religious programs, and I think it's obvious that the result would be different there because the establishment caused problems. This court rejected the use, status distinction in Carson with respect to the free exercise clause, but the use distinction of course makes a difference with respect to the establishment clause. In terms of the principles, how is it different from a choice program in the sense that no student is compelled to go to a religious charter school? And I would, of course, agree with you if that were the case. That would be a huge problem. No one's compelled to go. You have a choice to go to the traditional public school, or you can go to a charter school of your choice that you can obtain admittance to, or you can go to a private school. No one's being compelled to go to any school. It's just another option that is available. That's right. And this court had a case last week in Mahmoud where it involved story time with certain offensive messaging that no parent was required to send their child to that charter school, and I don't think that case would come out differently to that public school because I don't think it would come out differently because they could have  to a charter school. And similarly, no family in America has to send their kid to a traditional public school. They could send them to a private school. They could homeschool them. They could send them other options. But this court has never said that because you have the option of not sending your child to a traditional public school, public schools can teach religion as truth. Well, that's loading traditional public school into this, but I get that. No, I'm just taking the premise of your question is what's the problem? You have the option of going to a different school. No, you have a public school to go to, and you have private schools to go to, and you have charter schools to pick from. You may not like the environmental studies one, but you have other options, and this increases the options, at least theoretically. People can choose among public schools as well as you can transfer among public schools if the teaching in that school is offensive to you. Going back to the school prayer cases, there was a suggestion in the brief here that those cases are different because you were compelled to go to public school. That's wrong. Compulsory attendance laws since this court's decision in Pierce have not applied to students and parents who want to send their children to private schools or homeschool them. So everyone has the choice in that respect. I mean, I think if the court crosses the line in this case... The other options in Mahmoud were not free, so that's a big difference. It was telling the parents there, oh, don't go to the public school if you don't like it. Go pay $10,000. Well, that's a pretty big burden. That's not what we're talking about. I don't think Mahmoud would come out differently if you had in jurisdictions where parents had the option to send them to a charter school, Your Honor. Maybe the court will say otherwise, but I doubt it. Thank you, Counsel. Any questions, Justice Thomas? Mr. Garra, just a brief explanation as to why the board is on the other side. You seem so certain that this is a public school, and yet the board's on the other side of this. Well, it went rogue, Your Honor. The membership of the board was changed. Initially, there was resistance to granting this application because it flouted Oklahoma law, and there was a change in the board that we challenged right on the eve of a second vote, and the charter was passed 3-2. And that's why my client stood up to defend the board       against Oklahoma law and federal law under the Establishment Clause. Well, would the board say the same about you? Well, our composition hasn't changed on the eve of the vote, and I mean, of course they disagree with our characterization of the law.  But I mean, on Oklahoma law, I mean, you have what the Oklahoma Supreme Court said, which I think is binding, even in this court, as to what the state law means. We obviously disagree on the Establishment Clause, but that disagreement is really premised on the notion that this is a private entity, and they've rewritten state law to make that position. Well, it just seems as though the board can also read the Supreme Court opinion and yet give it a different meaning or weight than you do. Well, we can all read it, and I'll quote it. St. Isidore came into existence through the charter system with the state and will function as a component of the state's public school system. That's at page 38. I don't think there's any ambiguity there. Justice Alito? I want to give you a chance to respond to an argument that is made by the petitioners, and that has to do with the motivation for the position that provided the prompting for the decision that you're defending here today. This is what the Attorney General of the state said in an opinion, an official opinion of the Attorney General, when he changed the            position that his office was going to take. So these are not extemporaneous comments. While many Oklahomans undoubtedly support charter schools sponsored by various Christian faiths, the precedent created by approval of the application will compel approval of similar applications by all faiths. I doubt most Oklahomans would want their tax dollars to fund a religious school whose tenants are diametrically opposed to their own. And this is not an isolated story.   There are many. Isn't that a very serious masterpiece cake shop problem? This whole position that you're defending seems to be motivated by hostility toward particular religions. That's entirely incorrect, Your Honor, and if I can answer that in two different levels, one, the masterpiece piece, cake piece, and two, the comments, which I'll begin with.           And I think the right way to understand those comments is the Attorney General is simply making a point that members of this court have made, which is that once you open up government programs and bring people into becoming part of the government and approve one religion, not another religion or this religion, there's going to be strife that comes from that. And Justice Breyer emphasized that in his various opinions. They didn't carry the day from this court, but I think that that is a way that in the real world, religious divisions and strife have manifested themselves. It's frankly one of the reasons why we have a religion clause in the Constitution to begin with. With respect to masterpiece case, Attorney General... We have statement after statement by the Attorney General that reeks of hostility towards Islam, and then we have the provision of the Oklahoma Constitution on which the Oklahoma Supreme Court relied that has its own unsavory discriminatory history. Would you at least agree with that? Absolutely not. Absolutely not? That wasn't motivated by the  Blaine movement? No, it wasn't, Your Honor. And, you know, members of the Oklahoma Supreme Court have explained that. The brief from the legal historians explains that. It was motivated by clauses that predated the Blaine amendments, as well as motivated by the Sequoyah Constitution and the result of the Christianization of Americans. That's all laid out historically. This case, too, Oklahoma came into the Union in 1906, and the religion you're talking about   after the Blaine amendments and the Montana Constitution. So, no, it's not a Blaine amendment. Well, I think you're rewriting history. Do you think that anti-Catholic bigotry had disappeared from Oklahoma by 1907, or what's more pertinent, from the Congress of the United States from 1907? I think, Your Honor, of course, there were those who held that distasteful and odious bigotry. But the laws that the Oklahoma Constitution provision is based on long predated that. And I don't think that the court could treat any prohibition on funding that's similar as simply motivated by bigotry, and so we're not going to respect it. If you did, then I think frankly the establishment of jurisprudence with respect to public schools would come tumbling down. As to the masterpiece case, I want to make this clear. The Attorney General was not involved in the creation of the charter school system. He wasn't involved in the application in this case, so there's no masterpiece component. In fact, the application was approved. And I think if your concern is the treatment of Islam or Muslims, then the concern should be the Muslim family whose only practical option is the religious charter school that happens to teach the Catholic faith as truth. Why would that be the only option of such a  The parent could always send his or her child to the schools that you characterize as the public schools. First of all, there are jurisdictions in the country, New Orleans being the main one, where the only public schools are charter schools. In other jurisdictions, it's 50%, Denver, and D.C. There are jurisdictions in Oklahoma where your default public school that you're assigned to is the charter school       public school that say, no, I don't want to participate in prayer today. Thank you, Mr. Clark. I just have one more question. I will study the record carefully. But,  the way that you portray these  jurisdictions  they are public schools. Do you have inspectors who say, we want to see the teaching plan for the 10th grade English class in the charter school because we want to make sure that the books that the students are reading are the right books. Do you do that? They can do that. If you look at pages 18-19 of the Oklahoma Supreme Court's   about how charter schools are audited. Again, members of the charter school board participate in meetings. You look at the academic standards and it goes down to the level of the       change their governing body more directly. I don't know.  get into a whole lot of litigation as to whether they should appoint the  members, can they get solicit recommendations from the applicant,  But Justice Alito's question suggests that if they decide to change their operation because they don't want to  religious because they want a secular education, that he's open to an attack that they're being motivated by hostility to religion. So you'll be back in another pre-exercise claim,  of discrimination? There's no question that if this court rules in favor of petitioners it's ushering in a new breed of constitutional litigation. The court has already dealt with all comers and the court's decision in Martinez is just a taste of what's to come.  with respect, we've spent a lot of time on is this a state entity or not, but your second theory was that it's a state actor, and that hasn't been discussed that much. How do you deal with West and  how do you deal with the compulsion issue of West? That just went to the underlying federal constitutional violation. In terms of the state action question, the question is whether they're acting under state law. They don't come into creation without state law. That's exactly right. I want to correct one thing that my friend said in terms of discussing Rendall Baker versus West. West came after Rendall Baker.  recognized it where you're outsourcing constitutional functions. On top of that, you have the traditional state function, which is providing free public education. If this court were to rule for petitioners, what would happen in Oklahoma in these 40 plus other states with laws of a similar kind that declare charter schools to be public schools? What kind of issues would they have to confront in the future? What do you think the range of choices they would make is likely to be? First, every charter school law in the federal charter school program is unconstitutional because they all require that charter schools be public schools and that they be nonsectarian. States may react differently. Some may reenact charter schools under the details this court might lay out as to how to legislate. Many states will just say, no, with respect, in our state, our traditions are not to allow the teaching of religion in our public schools. We don't want to   This is going to  uncertainty and confusion  disrupting for millions of children and families across the country. There's another piece under the federal law, charter schools are covered because they're going to  all comers. Surely there will be schools that want to test the next limit. There will be questions about who can be teachers, can you have a gay teacher or not. There will be questions about curriculum. Maybe they would go too far and say you can't  evolution, you have to teach creationism. There will be problems in between. A couple questions. Are single sex charter schools constitutional? There are different policies on that. They do exist. I think that would be one way in which they wouldn't be like traditional public schools. In Oklahoma there are not single sex charter schools. Your theory would mean they are constitutional or not? Our theory as to constitutionality goes to teaching religion is truth in charter schools. I think the state action question is important to  that this court has always considered  existence of the school. There is no question the state can't come into existence without the state. I don't think that is a hard issue for the state of Oklahoma. I don't think that would be unconstitutional. Your comment about strife could also come when people who are religious feel like they are being excluded because they are religious. Whether it is the Muslim family who is aware of the comments that were made here or the Catholic school group that says we just want to have a charter school like the environmental group and the Chinese group and the math group. I think you are missing a portion of the country when you say strife would not result from that kind of outcome. I think if the rule is that charter schools are public schools and just like traditional public schools you cannot have the teaching of religion as truth in charter schools, I don't think that would create any new  The strife that I am referring to is the picking and choosing that will never occur when people line up to become a fully funded charter school. I think it is quite different. If you prevail in this case, the senior homes, food banks, hospitals that participate, receive government funding, participate in government programs like a foster care program, they would not become state actors because maybe the rule would just be schools are different but I would like a principle behind that would be helpful. I think this court recognizes that public schools are different in important ways but on your question they are not outsourcing public    constitutional obligation of governments that I am aware of to provide adoption services. It is not a  exclusive function. Adoption services were not a traditional public function. The government contractor scenario, that is what they    controlled by the state. It is an easy distinction. Justice Jackson? At its heart your argument begins with a statement in Carson that a state can permissibly choose to provide a strictly secular education in its public schools. If you start there, then I think you      that a state can choose to provide that kind of secular education. Charter schools is a subset of the public school right that Carson recognizes to provide a strictly secular education. So one point of clarification just on that is doesn't Oklahoma provide vouchers for parents who would like to have a religious education for their child. Those parents don't have to be in the public school we are providing strictly secular public school column. They can ask the state and they do get vouchers for religious private schools. Is that right? That's exactly right. I think it's an important point. Justice Kavanaugh referred to the win-win in the area of  The win-win here is states can promote the availability of a religious education in a private setting but states are not required to create the teaching of religion as truth in public schools. In your diagram of this we are in the public secular scenario. Charter schools are a subset of that. Outside of that column we have private religious schools which the state allows for and funds. That's exactly right. That's what the issue is. With respect to  Trinity Lutheran and the Chief Justice asks about unfairness Justice Kavanaugh asks about unfairness. As I understood it in Trinity Lutheran the state was offering grants to build playgrounds. The problem was that Trinity Lutheran was prohibited from accessing that benefit because they were religious. The church in Trinity Lutheran wanted to use the money to build a playground and they said no we can't give you the  In this case it seems to me it would be as if the church was saying we see you're giving out money to schools anyway.   say look it's not fair because you're giving money to schools anyway and it doesn't matter to us or we don't think it's relevant that you're giving it for a reason and as I said in my diagram the state here is giving it for the reason of being a public school within the nonsectarian world. They say no we want to use that money or that charter contract for religious purpose. Am I thinking about this correctly because I don't see that as unfair. I see that as the state saying we're giving it in a particular way for a  reason and you're not asking us for that. I think that's right if I understand the question correctly.  the state is saying we're expanding our public education opportunities and like public education has always been we're not allowing the funding and creation of teaching religion as truth. This case presents a question of a state that's conscientiously trying to avoid the separation between church and state. Imagine a state that    religion as truth in public schools. What we're going to do is go to the traditional public school and fire all the teachers and  and replace them with the staff. I don't think that would be a hard problem. As to the unfairness what the state          Thank you.  Rebuttal. A few points. Justice Gorsuch you asked if LeBron should control. The answer is yes. He's wrong that the state created Saint Isidore. I'd point  out that   created   You also asked whether the label can be different for constitutional purposes. LeBron makes it clear that can be true. Mr. Chief Justice you asked whether regulation can occur with regard to these charter schools.  is yes.   clearly can with voucher programs that's not enough. My friend also vastly overstates the extent to which the state can shut down a school.  cannot unilaterally shut down a school. The U.S. Olympic committee makes it clear that that alone is not enough either.  every corporation operates under a charter granted by a state. That's not enough to make it a government entity. Nobody believes that Philadelphia could have labeled foster care services to be state services and excluded Catholic social services. By contrast a ruling for us will only increase choice. No student will be compelled or placed in a charter school except by private choice. Has the state invited private actors into a government funding program? It's crystal clear that that's what Oklahoma has done here.  agrees that St. Isidore met all of the other requirements. We completely agree that that treats them as second class citizens. The                              funding